422 A.2d 1054

## SCHOOL DISTRICT OF PITTSBURGH

v.

## COMMONWEALTH, DEPARTMENT OF EDUCATION, Appellant.

Supreme Court of Pennsylvania.

Argued May 22, 1980.

Decided July 21, 1980.

Reargument Denied Aug. 25, 1980.

Robert J. Stefanko, Persifor S. Oliver, Jr., Pittsburgh, for appellant in No. 80–3–488.

Phillip A. Ayers, Asst. Atty. Gen., for appellee in No. 80–3–488.

Michael I. Levin, Harrisburg, for amicus curiae.

Edward G. Biester, Jr., Atty. Gen., Donna S. Weldon, Asst. Atty. Gen., for appellants in No. 80–1–72.

John Diefenderfer, Newtown, for appellee in No. 80–1–72.

Persifor S. Oliver, Jr., Pittsburgh, for appellee Pittsburgh School Dist.

Paul L. Stevens, Newtown, for appellee Pennsbury School Dist.

## OPINION OF THE COURT

ROBERTS, Justice.

As a result of a teachers' strike during the 1975–76 school year, appellee School District of Pittsburgh provided its students only 173 of the 180 days of instruction mandated by section 1501 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, as amended, 24 P.S. § 15–1501 (1962). At issue on these cross–appeals is whether, under section 2502(d) of the Code, appellant Department of Education must compute appellee district's state basic instructional subsidy as though no strike had occurred and a full 180 days of instruction had been provided. Unlike the Commonwealth Court, we agree with the Department that it may take into account that appellee district provided less than a full 180 days of instruction.

### I. The Subsidy Formula

Proper decision here requires careful analysis of the Public School Code's subsidy formula. Section 2502(d) of the Code provides:

"For the school year commencing the first day of July [of 1968] and each school year thereafter, each school district shall be paid by the Commonwealth on account of instruction of the district's pupils an amount to be determined by multiplying the aid ratio times the actual instruction expense per weighted average daily membership or by five hundred fifty dollars ($550), whichever is less, and by the weighted average daily membership for the district. For the school year 1973–1974 and each school year thereafter each school district shall be paid by the Commonwealth on account of instruction of the district's pupils an amount to be determined by multiplying the aid ratio times the actual instruction expense per weighted average daily membership or by seven hundred fifty dollars ($750), whichever is less."

Thus for the school year in question section 2502(d) makes a district's state subsidy the product of three factors: (1) the district's "aid ratio," (2) the district's "weighted average

daily membership," and (3) the district's "actual instruction expense per weighted average daily membership" or $750, whichever is less.[1]

The first factor "aid ratio" approximates the market value of property within a district relative to the market value of property in school districts throughout the Commonwealth.[2] The greater the district's relative wealth, the lower the aid ratio and, hence, the less the subsidy.

The second factor "weighted average daily membership" (WADM), as its name suggests, is defined as the district's "average daily membership," "weighted" in a manner reflecting the grade levels of district pupils.[3] It is agreed that "average daily membership" in a district where no strike and no reduction of instruction occurs is the district's daily enrollment added together over the full 180 day school year, divided by 180 days to obtain an "average." Expressed as a formula, average daily membership where no reduction in the number of days of instruction occurs is as follows:

1. This formula is found in the version of section 2502(a) contained in Act 125 of 1974, Act of June 26, 1974, P.L. 370, § 2. This formula has been amended by Act 1977–59, Act of August 24, 1977, P.L. 199, § 10 and Act 1979–41, Act of July 13, 1979, P.L. 85, § 3. See 24 P.S. § 25–2502(d) (Supp.1979).

2. "Aid ratio" is defined by section 2501(14) of the Code, 24 P.S. § 25–2501(14) (Supp.1979). The aid ratio in this case, 0.2852, is not in dispute. See infra text.

3. Definition of "weighted average daily membership" is contained in section 2501(10.2) of the Code, 24 P.S. § 25–2501(10.2) (Supp.1979). Section 2501(10.2) provides:

" 'Weighted Average Daily Membership' (WADM). The average daily membership for all resident pupils in the various levels of instruction shall be multiplied by the weight for that level as indicated to obtain the weighted average daily membership. The sum of the products so obtained shall be the weighted average daily membership for the district. The weighted average daily membership used in computing the aid ratio shall include kindergarten, elementary and secondary pupils."

Proper "weights" here are not in dispute. See § 2501(10.1), 24 P.S. § 25–2501(10.1) (Supp.1979). Rather, it is the Department's means of averaging where a strike reduces days of instruction which is called into question. "Average daily membership," however, is not defined by the Code. See infra text and n.5.

$$\text{Average Daily Membership} = \frac{\text{(Sum of daily enrollments for 180 days of instruction)}}{180 \text{ days}}$$

The third factor, the lesser of "actual instruction expense per weighted average daily membership" (AIE/WADM) or $750, reflects the extent of the Legislature's willingness to subsidize district spending per pupil.[4] Districts spending less than $750 per pupil (as determined by "weighted average daily membership") will be subsidized according to their actual instruction expenses. Those spending more than $750, however, will be subsidized according to the $750 ceiling.

Stated in terms of a formula, state subsidy is as follows:

$$\text{Subsidy} = \text{(Aid Ratio)} \times \begin{bmatrix} \text{(AIE/} \\ \text{WADM)} \\ \text{or} \\ \text{(\$750),} \\ \text{whichever} \\ \text{is less} \end{bmatrix} \times \text{(WADM)}$$

where AIE/WADM = "actual instruction expense per weighted average daily membership" and WADM = "weighted average daily membership."

Operation of the subsidy formula can best be understood by considering four hypothetical school districts, all of equal daily membership and equal wealth, which have provided 180 days of instruction. For purposes of illustration, each of the four hypothetical districts has an "aid ratio" of 0.5 and a daily membership of 1000. Each differs only in spending, District No. 1 spending $600 per pupil, District No. 2 spend-

---

**4.** "Actual Instruction Expense per Weighted Average Daily Membership" is defined by section 2501(11.1), 24 P.S. § 25–2501(11.1) (Supp. 1979). This definition includes the following definition of "actual instruction expense:"

"The actual instruction expense shall include all General Fund expenses of the district except those for health services, transportation, debt service, capital outlay, homebound instruction, and outgoing transfers to community colleges and technical institutes."

It is not disputed that under this definition actual instruction expenses are related to days of instruction provided. See infra text.

ing $750 per pupil, District No. 3 spending $900 per pupil, and District No. 4 spending $1,050 per pupil. Applying the Code subsidy formula, each hypothetical district's subsidy is as follows:

| District | AIE/WADM or $750, whichever is less | | | Aid Ratio | | WADM | | Subsidy |
|---|---|---|---|---|---|---|---|---|
| No. 1 | [($600) | ($750)] | × | (0.5) | × | (1000) | = | $300,000 |
| No. 2 | [($750) | ($750)] | × | (0.5) | × | (1000) | = | $375,000 |
| No. 3 | [($900) | ($750)] | × | (0.5) | × | (1000) | = | $375,000 |
| No. 4 | [($1,050) | ($750)] | × | (0.5) | × | (1000) | = | $375,000 |

As this illustration demonstrates, even though Districts No. 3 and No. 4 spent more than $750 per pupil, each receives the same subsidy of $375,000.

Each district's subsidy compares with spending as follows:

| District | Subsidy | Spending | Dollar Subsidy Per Dollar Spent (Rate of Subsidy) |
|---|---|---|---|
| No. 1 | $300,000 | $ 600,000 | 0.5000 |
| No. 2 | 375,000 | 750,000 | 0.5000 |
| No. 3 | 375,000 | 900,000 | 0.4167 |
| No. 4 | 375,000 | 1,050,000 | 0.3571 |

Thus Districts No. 1 and No. 2, spending no more than $750 per pupil, receive subsidy at the same rate. Districts No. 3 and No. 4, however, spending more than $750 per pupil, receive a subsidy which amounts to a decreasing percentage of actual expenditures.

In this case there is no dispute that appellee district's "aid ratio" is a constant 0.2852. Nor is there any question that appellee district's "actual instruction expense per weighted average daily membership" is $1080.29. Because this figure exceeds $750, for purposes of the subsidy formula $750 is to be employed.

The controversy centers upon the proper determination of the "average" for purposes of weighted average daily membership. Appellee district would arrive at the average by dividing the sum of daily enrollments for the 173 days of instruction actually provided, by 173 days. In terms of a

formula, appellee district's view of weighted average daily membership is:

$$\text{Weighted Average Daily Membership} = \frac{\text{(Sum of daily enrollments for 173 days of instruction)}}{\text{173 days}}$$

Using this formula, appellee district calculates its weighted average daily membership for the 1975–76 school year to be 71,113.396. On this calculation, appellee district contends it is entitled to a state subsidy of $15,211,155, computed as follows:

| Aid Ratio | | Weighted Average Daily Membership | | $750 | | Subsidy |
|-----------|---|-----------------------------------|---|------|---|---------|
| (0.2852) | × | (71,113.396) | × | ($750) | = | $15,211,155 |

The Department, on the other hand, maintains that appellee district's weighted average daily membership must take into account that appellee district provided less than 180 days of instruction. The Department thus divides the sum of daily enrollments for the 173 days of instruction actually provided not by 173 days, but by Code section 1501's 180 day instructional mandate. The Department's formula compares with appellee district's formula as follows:

$$\text{Weighted Average Daily Membership} = \frac{\text{(Sum of daily enrollments for 173 days of instruction)}}{\text{180 days}}$$

Thus, according to the Department, appellee district's weighted average daily membership is 173/180th of the district's figure of 71,113.396, here agreed to be 68,359.131. On this weighted average daily membership, the Department calculates appellee district's subsidy as follows:

| Aid Ratio | | Weighted Average Daily Membership | | $750 | | Subsidy |
|-----------|---|-----------------------------------|---|------|---|---------|
| (0.2852) | × | (68,359.131) | × | ($750) | = | $14,622,018. |

## II. Procedural History

The Department paid appellee district according to the Department's calculations but appellee district protested, claiming it is entitled to an additional $589,137, the difference between the subsidy arrived at by its calculation and

that actually paid. Following hearings, the Secretary of the Department ruled against appellee district, upholding the Department's view that subsidy calculation must take into account that appellee district did not provide 180 days of instruction.

On appellee district's appeal, the Commonwealth Court concluded the Department erred in considering that appellee district did not provide 180 days of instruction. The Commonwealth Court held, however, that because all subsidy funds had already been distributed, the Department could not be directed to pay the additional subsidy appellee district seeks. Thus it directed the Department to calculate future subsidies as though appellee district provided 180 days of instruction, even though it did not.

The Department now appeals by allowance, claiming the Commonwealth Court erred in directing that subsidies for a district providing less than 180 days of instruction be calculated the same as subsidies for districts which have provided 180 instructional days. Appellee district also appeals by allowance, maintaining the Commonwealth Court should have directed the Department to pay the sum allegedly due for the school year in dispute.

### III. The Public School Code Supports The Department

Whether the Department may calculate a district's subsidy by taking into account strike–related reductions in instructional days is not expressly addressed by any provision of the Public School Code. Indeed, the factor the Department employs to correct such reductions, "average daily membership," is not specifically defined in the Code.[5] Nor

5. Section 2501(3) of the Code, 24 P.S. § 25–2501(3), provides only that " 'Average Daily Membership' shall be computed in accordance with rules of procedure as established by the Superintendent of Public Instruction [(now Secretary of Education)]." Thus we reject appellee district's contention that the "plain meaning" of section 2501(3) somehow establishes the proper means of averaging where a strike has reduced days of instruction.

We note the Department admits that its power to "establish rules of procedure" conferred under section 2501(3) in no respect gives it authority to fashion any averaging device for purposes of strike–re-

does the answer to this question expressly appear anywhere in the statutes authorizing teachers' strikes. See Public Employe Relations Act, Act of July 23, 1970, P.L. 563, § 101 et seq., 43 P.S. § 1101.101 et seq. (Supp.1979).

■ Read in its entirety, however, the Code, both as enacted and as recently amended, strongly supports the position of the Department that instructional days lost as a result of a strike must be taken into account. First there is express Code provision for subsidy payments in cases of "Schools Closed on account of contagious disease, etc." Section 2523 of the Code provides:

> "When any board of school directors or county board of school directors with respect to area technical schools is compelled to close any school or schools on account of any contagious disease, the destruction or damage of a school building by fire or otherwise, and therefor is unable to keep such school or schools open for the minimum term required by this act, the Superintendent of Public Instruction may pay to such school district or board any or all of its share of the annual State appropriation as he deems proper."

Public School Code of 1949, § 2523, as amended, 24 P.S. § 25–2523 (1962). See Act of May 18, 1911, P.L. 309, § 2311 (source of § 2523); see also Act of January 14, 1970, P.L. (1969) 468, § 80. By mandate of the Statutory Construction Act, "[e]xceptions expressed in a statute shall be construed to exclude all others." 1 Pa.C.S. § 1924. As the Secretary concluded here:

> "[t]he clear implication of this subsection is that when the school year is less than the statutory minimum for any reason other than destruction or damage of school buildings or contagious disease, the School Code forbids the

lated days of instruction. See generally B. Schwartz, Administrative Law § 58 (1976). Rather, as the Department agrees, the averaging device to be employed is determined exclusively by the Legislature's statutory reimbursement scheme. See generally Rose Tree Media School District v. Department of Public Instruction, 431 Pa. 233, 244 A.2d 754 (1968).

Secretary from paying all the subsidy the school district would have otherwise received."

Also there are three supplements to section 1501 of the Code decreasing the state–mandated minimum days of instruction from 180 to accommodate "weather emergencies" of 1977 and 1978 and the "nuclear emergency" of 1979. Act 1977–4, which decreased to 177 the minimum days of instruction (and alternatively permitted reduction of hours of instruction), expressly provides:

"No public or approved private kindergarten, elementary or secondary school, vocational–technical school, or intermediate unit program of instruction which was closed because of the Weather Emergency and which makes a good faith effort as determined by the Secretary of Education to keep open for at least one hundred seventy–seven (177) days or the optional hourly basis of instruction for pupils shall receive less subsidy payments or reimbursements than it would otherwise be entitled to receive on account of the school year 1976–77."

Act of June 1, 1977, P.L. 4, § 1501.1, formerly 24 P.S. § 15–1501.1. Act 1978–50, which excused districts from changing graduation schedules or from requiring graduating students to return to school after graduation, similarly provides:

"No district which makes a bona fide effort as determined by the Secretary of Education to provide one hundred eighty (180) days of instruction for graduating students shall receive less subsidy payments or reimbursements than it would otherwise be entitled to receive on account of the school year 1977–78 because of the provisions of this act."

Act of April 28, 1978, P.L. 121, § 1501.2, formerly 24 P.S. § 15–1501.2. Act 1979–7, which depending upon a district's distance from the Three Mile Island Nuclear Plant reduced to 174 or 178 the minimum days of instruction (and optionally permitted reduction on an hourly basis), also provides:

"No public or approved private kindergarten, elementary or secondary school, vocational–technical school, or inter-

mediate unit program of instruction which was closed because of the Nuclear Emergency and which makes a good faith effort as determined by the Secretary of Education to keep open for at least one hundred seventy–four (174) days and one hundred seventy–eight (178) days as provided above or the optional hourly basis of instruction for pupils shall receive less subsidy payments or reimbursements than it would otherwise be entitled to receive on account of the school year 1978–79."

Act of May 11, 1979, P.L. 21, § 1501.4.

These express supplements to section 1501 carry the same implications as found in section 2523 that, except for the prescribed exigency, "the School Code forbids the Secretary from paying all the subsidy the school district would have otherwise received." Additionally, in making these reimbursement exceptions part of section 1501 of the Code, the Legislature makes clear that a direct relationship exists between the established 180 day requirement contained in section 1501 and the subsidy formula contained in section 2502(d).

Equally important is the overriding, statutorily–mandated presumption "[t]hat the General Assembly does not intend a result that is . . . unreasonable." 1 Pa.C.S. § 1922(1). It is not and, indeed, cannot be disputed that, as a strike causes days of instruction to decrease, there is a proportional decrease in actual instruction expenses.[6] On appellee district's reading of the Code, however, the Department would be obliged to pay strike–affected appellee district furnishing less than 180 instructional days the same subsidy it pays

---

**6.** Section 2501(11.1) of the Code defines "actual instruction expense" to include:

"all General Fund expenses of the district except those for health services, transportation, debt service, capital outlay, homebound instruction, and outgoing transfers to community colleges and technical institutes."

Undoubtedly there are certain expenses included under this definition which will not be affected by the number of days of instruction provided. At the same time, however, it is also clear that actual instruction expenses under section 2501(11.1) are in the Legislature's view substantially related to days of instruction.

districts providing a full 180 instructional days and spending more than appellee district.[7]

■ We are satisfied that the Legislature did not intend to favor a strike–affected district with a full subsidy where it provides fewer days of instruction than the number required by state law. There is not the slightest trace of legislative intent to give the same subsidy for less instruction, let alone even a suggestion of intent to afford an incentive to provide less instructional days. Indeed, there is clear legislative intent to the contrary. Only in the specific enumerated exceptions previously discussed does the Legislature permit a school district to receive a full subsidy where less than 180 days have been provided. Strike–related reductions in instructional days are not included among the named exceptions. These legislative provisions persuade us that appellee district's reading of the Code must be rejected.

7. The following example, which borrows in part from previous hypothetical District No. 4, illustrates. District No. 4, unaffected by a strike and providing 180 days of instruction, spends $1,050,000. District No. 5, in all other respects identical, experiences a seven day reduction in days of instruction as a result of a strike. This in turn causes it to spend $1,000,000, $50,000 less than its counterpart District No. 4. On appellee district's interpretation, District No. 5's subsidy would be equal to District No. 4's, as though no strike, no interruption of days of instruction, and no proportionally reduced spending had occurred:

| District | Aid Ratio | | WADM | | AIE/WADM or $750, whichever is less | | Subsidy |
|---|---|---|---|---|---|---|---|
| No. 4 (no strike) | (0.5) | × | (1000) | × | (~~$1,050~~) ($750) | = | $375,000 |
| No. 5 (strike) | (0.5) | × | (1000) | × | (~~$1,000~~) ($750) | = | $375,000 |

These respective subsidies, when compared with respective districts' spending, demonstrate that the effect of appellee district's interpretation is to increase the rate of subsidy for a strike–affected district:

| District | Subsidy | Spending | Rate of Subsidy |
|---|---|---|---|
| No. 4 (no strike) | $375,000 | $1,050,000 | 0.3571 |
| No. 5 (strike) | $375,000 | $1,000,000 | 0.3750 |

This occurs even though only District No. 5 has provided a full 180 instructional days.

By contrast, the Department's determination is in harmony with the legislative judgment. The Department's determination assures that districts providing less than a full 180 days of instruction as a result of a strike are not favored, thus achieving the Legislature's goal of fair subsidy allocation in relation to days of instruction provided. Hence we vacate the order of the Commonwealth Court and we reinstate the order of the Secretary of Education.[8]

Order of the Commonwealth Court vacated and order of the Secretary of Education reinstated.

LARSEN, J., files a dissenting opinion in which KAUFFMAN, J., joins.

LARSEN, Justice, dissenting.

I dissent.

The version of section 2502(d) of the School Code applicable to the instant case provides:

"For the school year commencing the first day of July [of 1968] and each school year thereafter, each school district shall be paid by the Commonwealth on account of instruction of the district's pupils an amount to be determined by multiplying the market value/income aid ratio times the actual instruction expense per weighted average daily membership or by five hundred fifty dollars ($550), whichever is less, and by the weighted average daily membership for the district. For the school year 1973–1974 and each school year thereafter each school district shall be paid by the Commonwealth on account of instruction of the district's pupils an amount to be determined by multiplying the aid ratio times the actual instruction expense per weighted average daily membership or by seven hundred fifty dollars ($750), whichever is less."

The critical portion of the subsidy formula prescribed by this section is "average daily membership". Average daily

8. In view of our rejection of appellee district's reading of the Code, we need not consider appellee district's claim that the Commonwealth Court improperly failed to apply its formula to this case.

membership, which the legislature found unnecessary to define in the School Code, is composed of non–technical words which should be construed "according to their common and approved usage." Act of December 6, 1972, P.L. 1339, No. 290, § 3, 1 Pa.C.S.A. § 1903(a). Accordingly, average daily membership should be construed to mean the average enrollment in the school district for each day of the instruction period. Such a reading effectuates the obvious purpose of the statute–to provide the same subsidy (before application of the aid ratio) for every school district which spends more than $750 per pupil[1] without regard to the specific number of days of instruction given in expending that sum–and is mandated by section 1921(a) of the Statutory Construction Act of 1972, Act of December 6, 1972, *supra*, 1 Pa.C.S.A. § 1921(a).[2] I would, therefore, hold that school districts should not receive reduced subsidies when strikes have prevented them from providing 180 days of instruction.

The majority, however, has reached a different conclusion by "interpreting" the statute and distorting the meaning of average daily membership. "Average daily membership", according to the majority, is not the sum of the enrollments for each day of instruction divided by the days of instruction given, it is the sum of the enrollments for each day of instruction divided by an arbitrary figure of 180.[3] If the legislature wished to utilize the subsidy formula contained in section 2502(d) as a penalty which enforces the 180 day instruction provision of section 1501, it would have done so expressly, as it has done in the past when it desired to enforce other parts of the Code. See, e. g., §§ 2519 and 2552.

1. If a school district spends less than $750 per pupil, the problem presented in the instant case does not arise.

2. That section provides that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly."

3. It is unclear what the majority will do with school districts that provide more than 180 days of instruction. Presumably, the arbitrary 180–day figure will be used for these districts as well, and other unfair distortions will occur in the subsidy allocations.

The sad thing about the majority opinion is that it penalizes the citizens of urban areas (Pittsburgh, Philadelphia, Harrisburg, Erie, Scranton, etc. and their suburbs) in two ways. First, the tax dollars which they have paid to the Commonwealth for education are being withdrawn; and second, the shortage from this withdrawal must be made up by increasing these citizens' local school taxes. It is these very urban areas that can least afford this type of unfair "double taxation".

I would affirm the order of the Commonwealth Court.

KAUFFMAN, J., joins in this dissenting opinion.